# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

**BECKY COUDERT, on behalf of herself and all others similarly situated,**

    Plaintiff,

v.                                            CASE NO.: 09-CV-02510-IPJ

**GE HEALTHCARE, INC., a Delaware corporation; GE HEALTHCARE TECHNOLOGIES, INC., a Wisconsin corporation; GE HEALTHCARE IITS LLC, a Delaware corporation; and GE HEALTHCARE IITS USA CORP., a Vermont corporation,**

    Defendants.

## MEMORANDUM OPINION

Pending before the court are the plaintiff's class action complaint (doc. 1), the defendants' motion to dismiss and brief in support thereof (doc. 8), the plaintiff's response to defendants' motion to dismiss (doc. 14), and the defendants' reply in further support of the motion to dismiss (doc. 17).

## STATEMENT OF FACTS

Plaintiff Becky Coudert brings this action under FED. R. CIV. P. 23 against defendants GE Healthcare, Inc.; GE Healthcare Technologies, Inc.; GE Healthcare IITS LLC; and GE Healthcare IITS USA Corp. The plaintiff brings this action on

behalf of herself and a class of similarly-situated persons who received excessive radiation doses from brain scans performed with defendants' equipment.

On October 9, 2009, the U.S. Food and Drug Administration released an initial notification to healthcare professionals regarding 206 patients that had received radiation doses of seven to eight times the expected level during CT brain perfusion scans (doc. 1, ¶ 15). The notification recommended that medical facilities review their CT brain scan protocols and indicated that the FDA had begun a safety investigation regarding CT scan radiation levels (doc. 1, ¶ 16). Defendants' CT machines are among those that have emitted higher levels of radiation than is recommended (doc. 1, ¶ 17).

On September 8, 2009, the plaintiff received a CT brain perfusion scan to determine whether she had suffered a stroke (doc. 1, ¶ 23). This procedure was performed at Huntsville Hospital using equipment manufactured by the defendants (doc. 1, ¶ 23). The scan emitted a higher level of radiation than was reasonably safe (doc. 1, ¶ 25).

Following the scan, the plaintiff's hair began to fall out, and "the genetic material of her brain cells was immediately damaged" (doc. 1, ¶ 24). This exposure to excess radiation placed her at a higher risk of contracting brain cancer (doc. 1, ¶ 27). A monitoring procedure can make early detection of brain cancer

possible, and this procedure is reasonably necessary in light of the plaintiff's radiation exposure (doc. 1, ¶¶ 28-29).

Plaintiff has requested relief in the form of a fund to pay for both medical monitoring of the class and damages in the event a member of the class develops a compensable injury (doc. 1, "Relief Requested," ¶ 3). The plaintiff further requests an injunction directing the defendants to maintain the fund in a constructive trust under jurisdiction of this court (doc. 1, "Relief Requested," ¶ 4).

## STANDARD OF REVIEW

In considering a defendant's motion to dismiss, the court must accept the plaintiff's allegations as true, *Hishon v. King & Spaulding*, 467 U.S. 69 (1984), and must construe the complaint in the plaintiff's favor. *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir 1993). A complaint may only be dismissed if the plaintiff can prove no set of facts that entitle him to relief. *Id.*

## LEGAL ANALYSIS

A.     Alabama law does not recognize a cause of action for medical monitoring absent a manifest injury.

Alabama does not recognize a cause of action for medical monitoring absent a past or present injury. *Hinton v. Monsanto Co.*, 813 So.2d 827, 832 (Ala. 2001). In fact, Alabama law "has long required a manifest, present injury before a

plaintiff may recover in tort." *Id.* at 829. *See also Southern Bakeries, Inc. v. Knipp*, 852 So.2d 712 (Ala. 2002) (employee exposed to asbestos could not recover absent actual injury stemming from the exposure); *Williamson v. Indianapolis Life Ins. Co.*, 741 So.2d 1057 (Ala. 1999) (insured on vanishing-premium life insurance policy could not recover until the insured was required to pay premiums beyond the date the policy should have become self-sustaining); *Ford Motor Co. v. Rice*, 726 So.2d 626 (Ala. 1998) (vehicle owners could not recover based on the possibility that their vehicles might one day roll over, absent actual injury); *Pfizer, Inc. v. Farsian*, 682 So.2d 405 (Ala. 1996) (heart-valve implant recipient could not recover against manufacturer when the implant was working properly and had not malfunctioned).

    Furthermore, Alabama law establishes that a cause of action in a toxic exposure case "accrues only when there has occurred a manifest, present injury." *Griffin v. Unocal Corp.*, 990 So.2d 291, 293 (Ala. 2008) (quoting *Cline v. Ashland*, 970 So.2d. 755, 773 (Ala. 2006) (Harwood, J., dissenting)). In this context, "the word 'manifest' designates a condition that has evidenced itself sufficiently that its existence is objectively evident and apparent, even if only to the diagnostic skills of a physician." *Cline*, 970 So.2d at 773 (Harwood, J., dissenting). Alabama does not recognize as "present injury" a concern or

possibility of future harm absent this manifest, present injury. *Rice*, 726 So.2d at 629 ("claims based upon allegations of inherent product 'defects' that have not caused any tangible injury are not viable"); *Southern Bakeries*, 852 So.2d at 718 ("[o]pening the courts generally for compensation for fear of future disease would be a dramatic change in the law").

Plaintiff claims that her hair loss following the CT scan is the manifest, present injury necessary to sustain her claim. While hair loss is a present injury, it is not one for which the plaintiff seeks relief. Rather, the plaintiff seeks relief for the "future medical monitoring of the members of the Putative Class and for the payment of damages in the event a member of the Putative Class should develop a compensable injury" (doc. 1, "Relief Requested," ¶ 3). This future compensable injury for which the plaintiff seeks relief relates not to her hair loss but rather to her "increased risk of contracting a serious, latent disease, namely brain cancer" (doc. 1, ¶ 27). That is, the plaintiff seeks relief not for a present injury but rather for an injury that has not yet occurred and may never occur. In this context, the risk of cancer is simply not a manifest injury necessary to sustain the plaintiff's claim for medical monitoring.

B.  Plaintiff's subcellular damage is insufficient to constitute a manifest, present injury.

Plaintiff further claims that her cause of action has accrued because upon her exposure to the radiation, "the genetic material of her brain cells was immediately damaged," ostensibly creating a manifest, present injury (doc. 1, ¶ 24). This subcellular damage, even if present, is not a compensable injury under Alabama's manifest injury standards. Although Alabama law does not address this issue directly, other courts throughout the country have examined the issue in the context of present injury standards analogous to Alabama's, and these courts have determined that subcellular damage is not a compensable present injury.

For example, the court in *In re Rezulin Prods. Liab. Litig.*, 361 F. Supp.2d 268, 275-77 (S.D.N.Y. 2005), examined a claim of subcellular damage under Texas law and Louisiana law, both of which require a present or manifest injury. The court first concluded that under Texas law, subcellular damage without a clinically manifested sign or symptom of injury is not compensable. *Id.* at 274. The court similarly determined that Louisiana law would reject a claim for subcellular damage without a clinically manifested symptom because any future consequences of the damage were only speculative. *Id.* at 278.

The Sixth Circuit also considered the subcellular damage issue in *Rainer v. Union Carbide Corp.*, 402 F.3d 608 (6th Cir. 2005). Applying Kentucky law, which requires a present physical injury, the court determined that subcellular

damage is not a present physical illness or injury and will not allow for recovery. Furthermore, although the court accepted that the plaintiffs had "amply demonstrated that chromosomal damage is directly linked with an increased likelihood of cancer," it concluded that "the evidence shows that their DNA damage is harmful only insofar as it is predictive of future disease." *Id.* at 622.

The Fifth Circuit similarly concluded in *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383 (5th Cir. 2005), that subcellular damage from exposure of beryllium-containing products were not physical injuries compensable under Mississippi law. Likewise, the Eleventh Circuit concluded that under Georgia law, subcellular damage from beryllium exposure was not compensable when not accompanied by any "identifiable physical disease, illness, or impairing symptoms." *Parker v. Wellman*, 230 Fed. Appx. 878, 882 (11th Cir. 2007).

Plaintiff argues that these holdings are inapplicable because they contemplate subcellular damage unaccompanied by physical illnesses or symptoms. In her case, the plaintiff claims, the subcellular damage was accompanied by physical symptoms–namely, her hair loss. Although the hair loss is a present injury, it is also a separate injury, neither an indication nor a symptom of subcellular damage. Therefore, the plaintiff's hair loss is not sufficiently related to the subcellular damage to make the subcellular damage itself a present injury.

Without a manifest present injury, the plaintiff's claim for medical monitoring must necessarily fail.

## CONCLUSION

Having considered the foregoing, the court is of the opinion that defendants GE Healthcare, GE Healthcare IITS, LLC, and GE Healthcare IITS USA Corp.'s motion to dismiss (doc. 8) is due to be granted. The court shall so rule by separate order.

**DONE** and **ORDERED** this 29th day of March 2010.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE